## APPEAL OF PATRICK J. SHOUVLIN.

Docket No. 1397.   Submitted September 1, 1925.   Decided January 28, 1926.

> 1. Loans by an individual to a corporation of which he was the sole stockholder, from funds of a business conducted by him as sole proprietor, for the purpose of enabling the corporation to pay its debts and expenses, are personal loans, and may not be included in invested capital of the sole proprietorship as accounts receivable.
>
> 2. Under the Revenue Act of 1918, a part of a debt may not be written off as worthless.

*James B. Malone*, *Esq.*, for the taxpayer.
*A. H. Fast*, *Esq.*, for the Commissioner.

### Before MARQUETTE and MORRIS.

This appeal is from the determination of deficiencies in income and profits taxes for the year 1917, and income taxes for the years 1918 and 1919, in an aggregate amount of $163,297.46, of which the taxpayer admits that approximately $108,000 is properly due.

During the years 1917, 1918, and 1919, the taxpayer was the sole proprietor of a gas-engine factory and business, located at Springfield, Ohio, which was operated under the name of Superior Gas Engine Co. During the same years he was also the owner, except for five shares necessary for qualification of directors, of all the capital stock of the Superior Feed Co., a corporation of Memphis, Tenn., which was engaged in the manufacture of animal foodstuffs.

Prior to 1910 the taxpayer had been engaged in the business of manufacturing cattle feed under the name of Louisiana Food & Products Co., and, up to January, 1910, had advanced money for that business to the net amount of $57,895.04.

In 1911, the business theretofore conducted by the Louisiana Food & Products Co. was incorporated by the taxpayer, under the laws of Tennessee under the name of Superior Feed Co. All of its capital stock of $99,000 was issued to the taxpayer for $38,052.18, representing the tangible assets, and $60,947.82, representing good will, of the predecessor business.

During the years from 1911 to and including 1919, the taxpayer, in the name and on the accounts of the Superior Gas Engine Co., advanced credits, by way of supplies and money, to the Superior Feed Co., the net indebtedness owing by the latter on December 31, 1919, amounting to $56,497.98. That sum was charged off the books of the Superior Gas Engine Co. under date of December 31, 1919, as a bad debt, and was claimed as a deduction in taxpayer's return for 1919. By reason of the sums owing by it to the taxpayer for the money advanced and supplies furnished, the Superior Feed Co., throughout the years 1918 and 1919, had liabilities in excess of its assets.

The Superior Gas Engine Co. continued to advance supplies and money to the Superior Feed Co., in the years subsequent to 1919. The balance of the account, as it stood upon the books of the Superior Gas Engine Co., was:

Jan. 1, 1917_____ $55,551.16
Dec. 31, 1917_____ 56,047.19

The account covered articles manufactured by the Superior Gas Engine Co. and sold to the Superior Feed Co. to the extent of a small but undetermined amount. The balance and greater part of the account consisted of advances for salaries, supplies, labor, taxes, etc., which the Superior Feed Co. owed and which were paid by it out of funds withdrawn by the taxpayer from the funds of the Superior Gas Engine Co. and advanced by him for the purpose, or were paid directly by the Engine Co.; it did not include any charges for goods manufactured by the Engine Co. and sold in the usual course of business.

During the year 1918, the taxpayer, as sole endorser, paid to the Mad River·National Bank promissory notes of the Superior Feed Co. which, with principal and interest, amounted to $34,701.71. The loans were made by the bank upon the credit of the taxpayer and, the Superior Feed Co. being unable to meet the payments, the taxpayer did so in response to a demand upon him as endorser.

The taxpayer charged off $17,701.71 of said amount in 1918 as a bad debt and claimed a deduction therefor upon his return for 1918.

The earnings of the Superior Feed Co. were:

| | |
|---|---:|
| 1917 | $13,124.93 |
| 1918 (loss) | 25,062.98 |
| 1919 | 3,262.60 |
| 1920 | 5,021.55 |
| 1921 (loss) | 100,933.19 |
| 1922 (loss) | 21,504.12 |
| 1923 (loss) | 2,661.97 |
| 1924 (loss) | 57,989.77 |

During the years 1916 to 1918, inclusive, the taxpayer individually, and not in the name of the Superior Gas Engine Co., advanced funds to the Superior Feed Co., for use in its business and in addition to any investment in the capital stock of that company, in the total amount of $157,284, and received payment on account thereof in the sum of $34,000. With interest of $2,065.50 on the balance of the account, the net amount owing to the taxpayer on August 1, 1918, was $12,349.50.

The balance sheet of the Superior Feed Co. as of December 31, 1918, showed assets of $180,273.47, including therein "good will" of $60,947.82. The liability side showed, as due to the taxpayer for cash advances $124,349.50, and capital stock of $99,000, which, reduced by a deficit of $85,970.78 left a capital balance of $13,029.22.

The balance sheet of that company as of December 31, 1919, showed assets of $245,442.83, including therein the good will item of $60,947.82. The liability side showed as due to the taxpayer for cash advances $124,349.50 and a deficit $82,708.18, leaving a capital balance of $16,291.82.

Under date of October 31, 1920, action was taken by the Superior Feed Co. to increase its capital stock from $99,000 to $200,000. A book entry was made transferring to the surplus account $58,148.90 of the amount then owing to the taxpayer, and the balance of $101,-000 was transferred to the capital stock account. Authority for the increase in capital stock was not granted by the State of Tennessee until 1924.

In May, 1925, all of the assets of the Superior Feed Co. were transferred to the taxpayer and he assumed liabilities represented by bank loans outstanding of about $116,000. The taxpayer then

sold all of the assets to the Royal Feed & Milling Co. for about $111,000, which was paid in cash, and retained the liability on the bank loans.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

MARQUETTE: The taxpayer had a successful business in the manufacture of gas engines. He became interested in the feed business and made loans to carry it on until he had so much money involved therein that he felt the necessity of taking it over to justify his investment through the exercise of his business ability in the extraction of the business from its financial difficulties. He organized the business as a corporation in 1912. Thereafter, he carried on the corporation, of which he was the sole stockholder, advancing it funds, sometimes out of his individual account and at other times out of his business conducted as the Superior Gas Engine Co. The funds advanced, however they may have been carried as a matter of bookkeeping, were funds of taxpayer.

The Revenue Act of 1917 provided for an excess profits tax upon individuals engaged in business, and no provision was made for consolidated returns in a situation where a sole proprietor of one business owned or controlled substantially all the stock of a corporation. Upon the record, the two businesses must be treated as separate and distinct business units.

The taxpayer contends that the amount of $55,551.16, which represented the total sum advanced to the corporation, should be treated as accounts receivable of the engine business and included in the surplus of that business for invested capital purposes. While that sum may have been advanced by the taxpayer and the amount thereof set up on the books of the Superior Gas Engine Co., we can not disregard the fact that that name was merely one used by the taxpayer in his individual business. It was the taxpayer who advanced the money and not an entity separate and distinct from the taxpayer himself. As such, was it an advance by him as the owner of the engine business or as an individual? To a very small extent, the exact amount of which was indefinite on the record, the advances represented goods made by the Engine Co. and sold to the corporation. But the larger part of the advances represented the payment of corporate obligations, such as taxes, salaries, and other business expenses. Some of the articles were purchased by the taxpayer for the gas-engine business and turned over to the corporation; others were purchased by the corporation and paid for by the taxpayer. As it appears to us, such advances were withdrawals from the engine business and personal loans by the

taxpayer to the Feed Co. They were not in any true sense accounts receivable of the gas-engine business With that business alone is the question of invested capital concerned, and the action of the Commissioner disallowing the advances as accounts receivable of the engine business and as part of its invested capital was proper.

The next question relates to the deduction in 1918 of $17,701.71, which constituted part of the sum of $34,701.71 which the taxpayer was obliged to pay by reason of his liability as an endorser on the notes of the corporation. A portion only of a bad debt is not deductible under the Revenue Act of 1918. *Appeal of Steele Cotton Mill Co.*, 1 B. T. A. 299; *Appeal of The Murchison National Bank*, 1 B. T. A. 617. We find nothing with respect to this deduction by the taxpayer which would take it out of the rule there announced, and the action of the Commissioner disallowing the same must be approved.

The remaining question relates to the deductibility in 1919 of the amount of $56,497.98, owing by the corporation to the taxpayer for advances by way of credits and money, as a bad debt. The corporation was at all times insolvent. The taxpayer knew it, but his repeated advances to the corporation evidence his expectation that the affairs of the corporation would thereby be eventually worked out. It is true that the liabilities of the corporation exceeded its assets and that it was technically insolvent, but the control of the corporation rested entirely in the taxpayer and its liabilities consisted principally of indebtedness to him. There were assets sufficient to reimburse the taxpayer in part, and upon the record the entire debt was not worthless and therefore was not deductible. *Appeal of Winthrop Ames*, 1 B. T. A. 63; *Appeal of G. C. Krack*, 1 B. T. A. 1119; *Appeal of Portland Railway, Light and Power Co.*, 1 B. T. A. 1150. Furthermore, the amount of $56,497.98 was but a portion of the indebtedness owing by the corporation to the taxpayer and, for the reason stated above, part of a debt is not deductible.